UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| GRAYLAN THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | No.: 19 C 1361 |
| | ) | |
| vs. | ) | Judge: |
| | ) | |
| CITY OF DANVILLE, DAWN HARTSHORN, | ) | JURY DEMAND |
| BRUCE STARK, PHIL WILSON, JOSHUA | ) | |
| EDINGTON, JOSHUA WEBB, AND | ) | |
| TROY NIPPER, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.  This is an action for money damages brought pursuant to 42 U.S.C. § 1983.

2.  Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

### Parties

4.  Plaintiff Graylan Thompson was at all relevant times a resident of Danville, Illinois.

5.  Defendant Danville Police Officers: Dawn Hartshorn (Star 375), Bruce Stark, Phil Wilson (Star 366), Joshua Edington (Star 383), Joshua Webb, and Troy Nipper (Star 407) ("Defendant-Officers") are duly appointed and sworn Danville Illinois police officers.

6.  At all times relevant to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

7.  The Defendant-Officers are sued in their individual capacities.

8.  Defendant City of Danville is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant-Officers.

**Facts**

9. On April 13, 2013, Jamal Sampson was shot and killed in Danville, Illinois.

10. The same day, Defendant-Officer Edington took Plaintiff into police custody so he could be interrogated about the shooting.

11. One the way to the police station, Plaintiff told Edington that he did not see who committed the shooting. Edington chose not to memorialize this statement in any police report.

12. At the police station, on April 13, 2013, and on subsequent days, Defendant-Officers Hartshorn, Stark, Wilson, Edington, and other Danville police officers interrogated Plaintiff while in police custody, about the shooting of Sampson.

13. During the course of these interrogations of Plaintiff, Defendant-Officers and other Danville police officers repeatedly tried to get Plaintiff to identify Robert Butler as Sampson's shooter. Plaintiff insisted he did not see the person who shot Sampson and could not make any identification.

14. Defendant-Officers chose not to memorialize Plaintiff's true statements in any police reports and instead made false and misleading statements in police reports about Plaintiff's knowledge of the shooting.

15. On or about August 14, 2013, Plaintiff was arrested on felony drug delivery charges and taken into police custody.

16. At the police station, on August 14, 2013 and August 15, 2013, Defendant-Officers Hartshorn, Stark, Wilson, Edington, and other Danville police officers interrogated Plaintiff while in police custody for many hours about the shooting.

17. On August 14, 2013 and August 15, 2013, Defendant-Officers and other Danville police officers tried to get Plaintiff to identify Robert Butler as the shooter, knowing that Plaintiff did not see the shooter.

18. On August 14, 2013 and August 15, 2013, Defendant-Officers and other Danville police officers threatened to charge Plaintiff with the murder of Jamal Sampson if he did not make a statement implicating Robert Butler as the shooter.

19. On August 14, 2013 and August 15, 2013, Defendant-Officers and other Danville police officers also promised plaintiff that if he testified against Butler they would dismiss the drug charges he had just been arrested for.

20. Out of fear of being falsely implicated in a first-degree murder, and after hours of coercive police interrogation, on August 15, 2013, Plaintiff finally acquiesced to police pressure and agreed to make an audio recorded statement implicating Robert Butler as the shooter.

21. Defendant-Officers and other Danville police officers knew Plaintiff's statement and identification of Butler was false and the product of police coercion.

22. Defendant-Officers fabricated the content of Plaintiff's audio-recorded statement.

23. Defendant-Officers then fabricated a police report documenting Plaintiff's statement identifying Robert Butler as the shooter by intentionally omitting that Plaintiff's statement of identification was false and the product of police coercion.

24. Robert Butler was subsequently arrested and charged with the first-degree murder of Jamal Sampson.

25. As Robert Butler's criminal trial approached, Plaintiff on many occasions told police officers and prosecutors that he did not see who had really shot Sampson.

26. However, on these occasions he was told that he had to stick with his audio-recorded statement, and was reminded that if he told the truth he could be charged with first degree murder or charged with perjury, and that he would be prosecuted on his felony drug delivery case.

27. On February 13, 2014, Plaintiff testified at trial against Butler. His testimony was consistent with the coerced audio-recorded statement he made to police.

28. At no time did police or prosecutors disclose to Butler's criminal defense attorney that the statement of Plaintiff was false and procured through coercion.

29. The following day, Robert Butler was found guilty of first-degree murder.

30. Subsequently, as promised, Defendant-Officers took steps to have Plaintiff's drug charges dismissed.

31. In May 2014, Butler was granted a new trial.

32. In May 2016, the state dismissed all charges against Butler on the eve of the re-trial in response to pressure from Butler's criminal attorney pressing the State for all discovery on the promises made to Plaintiff and the coercion that led to his statement.

33. In March 2017, Butler filed a civil rights lawsuit against Danville police officers.

34. Plaintiff was called to give a deposition in Butler's civil case and was asked questions about his interactions with Defendant-Officers in 2013 and 2014 and his statements implicating Butler as the shooter.

35. At his deposition on December 7, 2017, Plaintiff admitted that the audio-recorded statement he gave to police as well as his testimony at Butler's trial was the product of police coercion. He testified that he was threatened by Defendant-Officers that he would be charged with first-degree murder if he did not identify Butler as the shooter. He further testified that he was promised by Defendant-Officers that if he identified Butler as the shooter his pending drug case would be dismissed.

36. Shortly after Plaintiff testified at his deposition in Butler's civil case, wherein he exposed Defendant-Officers for coercing his false testimony in a first-degree murder case, Defendant-Officers worked together to bring false felony charges against Plaintiff for perjury.

37. On April 5, 2018 and on May 17, 2018, Defendant-Officer Webb testified before a grand jury to secure false indictments against Plaintiff for perjury, knowing there was no probable cause to do so.

38. On April 9, 2018, Defendant-Officers Nipper and Webb arrested Plaintiff for perjury, knowing there was no probable cause to do so.

39. Nipper and Webb had Plaintiff arrested and charged with perjury in order to cover-up the misconduct of Defendant-Officers Hartshorn, Stark, Wilson, Edington, and other Danville police officers, and to retaliate against Plaintiff for exposing the truth.

40. Defendant-Officers knew that the statements made by Plaintiff in 2014 were the product of unlawful police coercion and were outside of the three-year statute of limitations for perjury charges. They further knew that the statement made at his deposition in December 2017 was truthful and not perjurious testimony.

41. Despite this, Defendant-Officers Nipper and Webb worked together with Defendant-Officers Hartshorn, Stark, Wilson, Edington, and other Danville police officers, to commence and continue the false prosecution of Plaintiff by instituting false felony charges, providing false statements to the state's attorneys, providing false testimony, and drafting false reports.

42. The case against Plaintiff was docketed as People v. Graylan Thompson, case number: 2018CF000200.

43. Due to the serious nature of the charges, Plaintiff's bond was set at $30,000 D, requiring Plaintiff to post $3,000 to secure his release, an amount he could not afford.

44. Plaintiff was detained at the Vermilion County Jail for approximately three weeks before he could get together the money needed to post bond.

45. Plaintiff was released on bond on May 3, 2018.

46. After Plaintiff posted bond he remained seized, detained, and subject to conditions of bond, throughout the duration of his prosecution. As his prosecution was ongoing, Plaintiff was unable to leave the jurisdiction, was required to appear in court monthly, and faced the constant threat of being taken into custody if he violated any condition of his bond.

47. On June 26, 2018, Plaintiff's criminal court judge granted his motion to dismiss the perjury indictment against him.

48. On July 5, 2018, the State filed a notice of appeal to the Third District Appellate Court.

49. On November 5, 2018, the Third District Appellate Court issued a mandate that the State's appeal be dismissed.

50. Plaintiff remained seized, detained, on bond, and subject to prosecution until November 5, 2018, when the dismissal of State's appeal of the dismissal of his indictment was officially docketed by the Third District Appellate Court.

51. As a direct and proximate result of the acts of the Defendant-Officers described above, Plaintiff suffered loss of freedom, emotional distress, and pecuniary damages.

52. Each individual Defendant-Officer personally participated in the unlawful conduct and acted jointly and in concert with the other Defendants who participated or acquiesced in the unlawful conduct or failed to intervene to stop the unlawful conduct.

## COUNT I
### (42 U.S.C. §1983 – False Arrest)

53. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

54. Some or all of the Defendant-Officers arrested Plaintiff on April 9, 2018, and/or failed to intervene to stop the false arrest of Plaintiff despite having the opportunity to do so.

55. These Defendant-Officers did not have probable cause or any other legal justification to arrest Plaintiff.

56. The arrest of Plaintiff without probable cause violated his Fourth Amendment

right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable seizures.
WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant-Officers,
b) Award Plaintiff compensatory and punitive damages,
c) Award attorneys' fees and costs, and
d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT II
### (42 U.S.C. § 1983 Fourth Amendment Claim for Unlawful Detention)

57. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

58. Some or all of the Defendant-Officers, knowing that probable cause did not exist, acted individually, jointly, and/or in conspiracy, to cause Plaintiff to be arrested, detained and prosecuted for serious felony perjury charges or failed to intervene knowing that Plaintiff was being detained without probable cause, thereby violating Plaintiff's right to be free from unreasonable seizures guaranteed to him by the Fourth and Fourteenth Amendments of the United States Constitution.

59. Plaintiff was detained during the time he was in custody in the Vermilion County Jail and also during the time he was on bond. During this time, Plaintiff's freedom of movement was restricted, he had conditions of bond that he was required to comply with or face arrest, his appearance was compelled at court dates, and he was under the control of the Vermilion County court system.

WHEREFORE, Plaintiff asks that this Honorable Court:
a) Enter judgment against Defendant-Officers,
b) Award Plaintiff compensatory and punitive damages,
c) Award attorneys' fees and costs, and
d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT III
### (State Law Claim for Malicious Prosecution)

60. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

61. Some or all of the Defendant-Officers commenced and/or continued false perjury charges against Plaintiff.

62. These Defendant-Officers did so with malice.

63. There was no probable cause for such charges.

64. The charges were terminated in a manner favorable to Plaintiff and consistent with his innocence.

65. Plaintiff suffered damages as a result, in the form of loss of freedom, emotional distress and pecuniary damages.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant-Officers

b) Award Plaintiff compensatory and punitive damages,

c) Award costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT IV
### (Claim for Indemnification pursuant to 745 ILCS 10/9-102)

66. The acts of the Defendant-Officers described above were willful and wanton, and committed in the scope of employment.

67. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant City of Danville is liable for any judgments in this case arising from the Defendant-Officers' actions.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant City of Danville to indemnify the Defendant-Officers for any judgment entered in this case arising from their actions.

## COUNT V
### (State law claim for *Respondeat Superior*)

68. The acts of the Defendant-Officers, as described above, were committed in the scope of employment.

69. As principal and employer, Defendant City of Danville is liable for its agents' actions under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff asks that this Honorable Court find Defendant City of Danville liable for the actions of Defendant-Officers for any judgment entered in this case on the state law claims arising from their actions.

**Plaintiff demands a trial by jury on all claims.**

                                    Respectfully submitted,

                                    /s/ Sara Garber
                                    *Counsel for Plaintiff*

Sara Garber
Thedford Garber Law
53 West Jackson Blvd., Suite 638
Chicago, Illinois 60604
O: 312-614-0866
E: sara@thedfordgarberlaw.com